UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GLORIA A. SHEAR,

                          Plaintiff,

v.                                              5:14-CV-0873
                                                (GTS)
COMM'R OF SOC. SEC.,

                          Defendant.

_____

APPEARANCES:                          OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.           VERNON NORWOOD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Gloria A. Shear

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 9, 10.)  For the reasons set forth

below, Plaintiff's motion is granted in part and denied in part and Defendant's motion is

granted in part and denied in part.


I.      RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on October 18, 1961. (T. 254.) She completed one year of college. (T. 289.)  Generally, Plaintiff's alleged disability consists of carpal tunnel syndrome ("CTS"), torn ligaments in her right arm, arthritis, bone spurs, tendonitis, and tail bone injury. (T. 283.)  Her alleged disability onset date is March 10, 2008. (T. 279.) Her date last insured is September 30, 2014. (T. 26.) She previously worked as a custodian/janitor, housekeeper, and kitchen helper. (T. 284.)

### B.    Procedural History

On September 12, 2009, Plaintiff applied for Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 254.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 30, 2010, Plaintiff appeared before the ALJ, Marie Greener. (T. 49-83.) On August 6, 2010, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 122-136.) On May 24, 2012, the Appeals Council ("AC") remanded the claim for further proceedings. (T. 144-146.) On December 11, 2012, Plaintiff again appeared before ALJ Greener. (T. 84-120.) On March 12, 2013, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 21-47.) On May 15, 2014, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 5-10.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 24-47.) First, the ALJ found Plaintiff met the insured status requirements through September 30, 2014 and had not engaged in substantial gainful activity since March 10, 2008. (T. 26.) Second, the ALJ found Plaintiff had the severe impairments of cervical spine degenerative disc disease ("DDD"), right shoulder pain, and right median neuropathy. (T. 27.) The ALJ determined Plaintiff's medically determinable impairments of lumbar spine pain, CTS, migraine headaches, tailbone injury, arthritis, and mental impairments were non-severe impairments. (T. 27-29.) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 30.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "light work," except:

> She can never reach overhead with the dominant right arm and can only occasionally lift, carry, push, pull, and operate machine controls with the dominant right arm; but [was] otherwise able to handle, grasp, and perform fine manipulations and [could] use the left upper extremity without restrictions.

(*Id.*)[1]

Fifth, the ALJ determined Plaintiff was unable to perform her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 36-37.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

**A.    Plaintiff's Arguments**

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ erred by failing to find Plaintiff's impairments of the lumbar spine and CTS severe. (Dkt. No. 9 at 10-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (*Id.* at 12-18.) Third, Plaintiff argues the ALJ erred in failing to make a proper credibility determination (*Id.* at 18-20.) Fourth, Plaintiff argues the ALJ's step five finding was not supported by substantial evidence. (*Id.* at 20-22.) Fifth, and lastly, Plaintiff argues the AC erred when it denied review and determined that the additional evidence submitted by Plaintiff was duplicative. (*Id.* at 23-24.)

**B.    Defendant's Arguments**

In response, Defendant makes five arguments.  First, Defendant argues Plaintiff's lumbar spine condition and CTS were non-severe impairments. (Dkt. No. 10 at 15-17 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ correctly assessed Plaintiff's RFC. (*Id.* at 17-21.) Third, Defendant argues the ALJ correctly assessed Plaintiff's credibility. (*Id.* at 21-24.) Fourth, Defendant argues Plaintiff retained the RFC to perform work which existed in significant numbers in the national economy. (*Id.* at 24-27.) Fifth, and lastly, Defendant argues evidence submitted to the AC following the issuance of the ALJ's decision provided no basis to alter the ALJ's decision. (*Id.* at 27-28.)

### III.     RELEVANT LEGAL STANDARD

#### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1620. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    Whether the ALJ Properly Determined at Step Two that Plaintiff's Impairments of CTS and Lumbar Spine Injury Were Non-Severe.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10 at 15-17 [Def.'s Mem. of Law].) The Court adds the following analysis.

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* C.F.R. § 404.1520(c). The plaintiff bears the burden of presenting evidence establishing severity. *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)). In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v.*

*Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F.Supp.3d 578, 593 (S.D.N.Y. 2014) (*citing Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Here, the ALJ determined that Plaintiff's lumbar spine condition and CTS were non-severe impairments. (T. 26-27.) To be sure, the ALJ's wording was somewhat misleading. In her step two discussion, the ALJ created a heading titled "Non-Severe and Not Medically Determinable Impairments." (T. 27.)[2] Under that heading the ALJ listed and discussed Plaintiff's impairments of lumbar spine and CTS, thus initially implying that Plaintiff's lumbar spine condition and CTS were "non-severe" *and* "not medically determinable impairments." However, a reading of the ALJ's discussion makes it clear that the ALJ determined Plaintiff's lumbar spine condition and CTS were medically determinable impairments, but that they were "non-severe."

---

[2]     For a condition to be a medically determinable impairment it "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508. Once an impairment is determined to be a medically determinable impairment it is then determined whether or not it is a "severe" impairment.

Plaintiff argues her lumbar spine condition and CTS were severe impairments, causing more than minimal functional limitations and therefore the ALJ erred in her step two determination. (Dkt. No. 9 at 10-12 [Pl.'s Mem. of Law].) In support of her argument that her lumbar spine condition was a severe impairment, Plaintiff cites to an MRI in the record and treatment notes which she argues were "more than enough to demonstrate" a severe impairment. (*Id.* at 11.) However, as previously stated, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (*citing McConnell v. Astrue,* No. 03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. March 27, 2008)). Therefore, a plaintiff needs more than a diagnosis and treatment of an impairment for that impairment to be considered severe.

Although the record contains complaints of pain in the lumbar area, the record does not contain functional limitations associated with her lumbar injury. (*see* T. 675, 807, 861, 863, 866, 869, 873, 876, 879, 882, 885, 887, 891, 894, 896, 900, 902.) The ALJ properly determined Plaintiff's lumbar condition was a non-severe impairment because the record failed to provide functional limitations associated with that condition; further, any error in failing to classify this condition as severe was harmless because the ALJ proceeded with the sequential process.

Plaintiff next argues that medical evidence established the presence of CTS. (Dkt. No. 9 at 11-12 [Pl.'s Mem. of Law].) Again, diagnosis alone does not constitute a severe impairment. The ALJ's step two determination, that Plaintiff's CTS was non-severe, was supported by substantial evidence. For example, consultative examiner, George Alexis Sirotenko, D.O., observed Plaintiff's hand and finger dexterity were

intact, Plaintiff had full grip strength, and a negative Tinel's sign. (T. 675, 676.) One of Plaintiff's treating physicians, Kevin Setter, M.D., noted that although an electrodiagnositic test showed evidence of bilateral median compression, Plaintiff did not have any "physical manifestations of [CTS]." (T. 725.) Therefore, substantial evidence supports the ALJ determination that Plaintiff's CTS was a non-severe impairment; further, any error in failing to classify this condition as severe was harmless as the ALJ proceeded with the sequential process.

**B.     Whether the ALJ's RFC was Supported by Substantial Evidence.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10 at 17-21 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ's RFC was not supported by substantial evidence because she: 1) failed to properly weigh the opinion evidence of Angelo Porcari, M.D., Louis Nunez, M.D., and Ronald Baker, M.D., 2) failed to comply with the AC's order, and 3) failed to reconcile her RFC finding with opinions in the record. (Dkt. No. 9 at 14 [Pl.'s Mem. of Law].) Plaintiff specifically contends that the ALJ failed to comply with the AC remand order directing the ALJ to properly evaluate the medical opinions of the record. (*Id.* at 18.)[3]

_____

[3]     Defendant claims that this Court does not have jurisdiction to review an AC order remanding a case, because it is not the "final decision of the Commissioner" under 42 U.S.C. § 405(g). However, failure to comply with a remand order may be grounds for remand. *See Gorman v. Astrue*, No. 5:08-CV-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009) (remanding for failure to comply with an Appeals Council's remand order); *see Scott v. Barnhart,* 592 F.Supp.2d 360, 371–72 (W.D.N.Y.2009) ("The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand.").

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Id.* at § 404.1527(c)(2). The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Plaintiff argues the ALJ erred in affording treating physician Dr. Porcari's opinion "limited weight." (Dkt. No. 9 at 14 *referring to* T. 34. [Pl.'s Mem. of Law].) Dr. Porcari completed a medical source statement on February 25, 2010. (T. 795-797.)[4] The ALJ afforded the opinion "limited weight" reasoning that although Dr. Porcari was a treating physician, his opinion was not supported by objective medical evidence or treatment history, and was contrary to other medical opinions. (T. 34.)

---

[4]      Dr. Porcari opined Plaintiff could sit 30 minutes at one time and stand for two hours at one time. (T. 795.) He further opined Plaintiff could sit for less than two hours in an eight hour workday and stand/walk for two hours in an eight hour workday. (*Id.*) He opined she would require a job that permitted shifting positions at will. (*Id.*) He opined that Plaintiff would require a 25 minute break every two hours. (T. 796.) He opined Plaintiff could frequently lift and carry less than ten pounds and occasionally lift and carry ten pounds, but could rarely lift and carry 20 pounds and should never lift and carry 50 pounds. (*Id.*) He opined Plaintiff could rarely: look down, turn head right or left, look up, and hold head in static position. (*Id.*) He opined Plaintiff could occasionally: twist, stoop (bend), crouch/squat, climb ladders, and climb stairs. (*Id.*) He opined Plaintiff could rarely: use her hands to grasp, turn, twist objects or use her fingers for fine manipulation. (*Id.*) He opined Plaintiff could never use her arms for reaching. (*Id.*) He opined Plaintiff would miss work more than four days a month due to her condition and her pain/symptoms would "constantly" interfere with her attention and concentration. (T. 797.)

Plaintiff argues that Dr. Porcari's opinion was supported by other medical evidence in the record. (*Id.*) For example, Plaintiff argues Dr. Porcari's opinion that Plaintiff could rarely grasp, turn, or twist objects; rarely perform fine manipulations; and never reach (T. 796) was supported by Dr. Baker's opinion that Plaintiff was restricted to work which did not involve "repetitive use of her arm" (T. 506). (Dkt. No. 9 at 15 [Pl.'s Mem. of Law].) However, Plaintiff attempts to cast too broad a net with this argument. A general restriction to "no repetitive use of an arm" does not necessarily encompass specific restrictions on the plaintiff's ability to use her hand and fingers, or a combination of arm/hands/fingers.

The ALJ's RFC analysis specifically analyzed Plaintiff's ability to use her arms, use her hands, and use her fingers in her RFC analysis.[5] The ALJ ultimately concluded that Plaintiff could "never" reach overhead with her right arm. (T. 30.) The ALJ's limitations to never reaching overhead with Plaintiff's right arm was more specific and restrictive than Dr. Baker's limitations to "no repetitive use of her arm" and more in line with Dr. Porcari's restriction that Plaintiff could "never" use her arms for reaching. The ALJ conducted a more precise analysis regarding Plaintiff's use of her arms than the Plaintiff is asking for in her argument.

A plaintiff's ability to use her arms may include not just her arm, but her hands and fingers as well; however, a limitation in the use of one's arm does not necessarily limit the use of hands and fingers. An ALJ must carefully evaluate the opinion evidence to determine a plaintiff's actual limitations when the use of her arm is limited to

---

[5]     According to SSR 83-14, "many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects. Any limitation of these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work."

determine if those limitations apply to the entire upper extremity or not. Here, the ALJ's RFC analysis regarding Plaintiff's use of her arms, hands, and fingers was supported by substantial evidence. For example, Dr. Nunez opined Plaintiff could perform simple grasping and fine manipulations with either hand. (T. 740.) Joy Lin Chan de Luna, M.D., observed Plaintiff could grasp objects like pens, turn knobs, and drive without discomfort. (T. 718.) For the reasons stated herein, the ALJ's analysis regarding Plaintiff's use of her arms, hands, and fingers was proper and her RFC determination was supported by substantial evidence.

Plaintiff also specifically argues that the ALJ's RFC analysis was faulty because it did not include Dr. Baker's opinion that Plaintiff could not perform work that involved repetitive arm use. (Dkt. No. 9 at 17 [Pl.'s Mem. of Law].) However, for the reasons stated *supra*, the ALJ properly analyzed the opinion evidence regarding Plaintiff's limitations in the use of her arms, hands, and fingers and her RFC determination reflecting those limitations was supported by substantial evidence.

Plaintiff further argues the ALJ's RFC analysis failed to include Dr. Nunez's observation that Plaintiff should never crawl or climb, and could only occasionally bend and squat. (Dkt. No. 9 at 16 *referring to 740* [Pl.'s Mem. of Law].) First, the ALJ properly afforded this portion of Dr. Nunez's opinion limited weight, as it was inconsistent with other objective evidence in the record. (T. 34, *see* T. 675-676.)

Second, failure to include a limitation on Plaintiff's ability to stoop, crouch, crawl, and kneel was harmless in this case. The occupational base for light work is virtually

intact when a plaintiff is limited to performing these non-exertional activities

"occasionally." Social Security Ruling 85-15, (S.S.A. 1985.)[6] SSR 85-15 illustrates:

> stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop *occasionally* (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is *virtually intact.* . . This is also true for crouching (bending the body downward and forward by bending both the legs and spine)."

*Id.* (emphasis added).

Therefore, the ALJ properly afforded Dr. Nunez limitations in this regard limited weight,

and further, SSR 85-15 illustrates that failure to include specific limitations in this area

was harmless, as such limitations would not significantly erode the occupational base of

light work.

### C.  Whether the ALJ Properly Evaluated Plaintiff's Credibility.

After carefully considering the matter, the Court answers this question in the

affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10 at

21-24 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great

weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*,

614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982

F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's]

subjective complaints without question; he may exercise discretion in weighing the

credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier*

*v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d

Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with

---

[6]      Kneeling is to bend at the knees alone. Stooping is to bend at the spine alone. Crouching is bending both the spine and legs. SSR 85-15.

sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983)).

The ALJ determined that Plaintiff's medically determinable impairments could "reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible." (T. 35.) Specifically, the ALJ found that Plaintiff's allegations

were inconsistent with objective medical evidence, inconsistent with her activities of daily living, she received conservative treatment, and her statements were internally inconsistent. (*Id.*) Plaintiff argues the ALJ erred in relying on Plaintiff's conservative treatment to undermine her credibility, the ALJ mischaracterized her activities of daily living, and the ALJ failed to account for the side effects of Plaintiff's medications. (Dkt. No. 9 at 19-20 [Pl.'s Mem. of Law].)

To be sure, a plaintiff may be found disabled even where she follows a conservative course of treatment. *See Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir. 2000) (ruling that "the district court improperly characterized the fact that [the treating physician] recommended only conservative [treatment] as substantial evidence that plaintiff was not physically disabled during the relevant period"). However, in making a credibility determination, an ALJ may take into consideration "any measures taken by the [plaintiff] to relieve symptoms." 20 C.F.R. § 404.1529(c)(3)(vi). Further, Plaintiff's course of treatment was but one factor the ALJ looked at in her credibility determination. Therefore, the ALJ did not err in evaluating Plaintiff's course of treatment in her credibility analysis, because the ALJ may take into consideration any measures Plaintiff uses to treat her symptoms; and further, the ALJ took into consideration many other factors in evaluating Plaintiff's credibility.

The ALJ also properly relied on Plaintiff's activities of daily living and was correct in her assertion that Plaintiff's pain did "not prevent her from taking part in social activities" and did "not prevent her from taking part in recreational activities." (T. 35.) Notations from Dr. Thomas indicated that Plaintiff's pain did not prevent her from performing social or recreational activities. (T. 868, 872, 875, 878.) There is one notation that Plaintiff's pain prevented her from recreational activities, but not social

activities. (T. 872.) Plaintiff argues this one notation of restriction, among the majority of notations that observe no restrictions, supports Plaintiff's testimony. (Dkt. No. 9 at 19 [Pl.'s Mem. of Law].) Plaintiff concedes that "some" of the citations support the ALJ's assertion, while others do not and Dr. Thomas should be re-contacted for clarification. (*Id.* at n.6.) A reading of Dr. Thomas's medical observations illustrate that all but one notation regarding Plaintiff's ability to maintain social and recreational activities support the ALJ's conclusion. It was proper for the ALJ to rely on the majority of Dr. Thomas's notations indicating that Plaintiff's pain did not interfere with her social or recreational activities. Further, the ALJ was not under an obligation to re-contact Dr. Thomas for clarification. Reviewing courts hold that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

Plaintiff also argues the ALJ erred in failing to discuss all of Plaintiff's medications and their side effects. (Dkt. No. 9 at 20 [Pl.'s Mem. of Law].) The Plaintiff fails to cite to the record in support for her argument. In general, "an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)). For the reasons stated herein, the ALJ's credibility analysis was supported by substantial evidence and the ALJ's rationale was thorough.

### D. Whether the ALJ's Step Five Finding was Supported by Substantial Evidence.

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 9 at 22 [Pl.'s Mem. of Law].) The Court adds the following analysis.

To be sure, this Court concludes that the ALJ's RFC determination was supported by substantial evidence and further, the hypothetical posed to the VE (which ultimately became the ALJ's RFC determination), was proper. However, this Court cannot determine if the ALJ's step five finding was supported by substantial evidence because the ALJ failed to fulfill her affirmative duty to resolve a conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT") pursuant to SSR 00-4p, 2000 WL 1898704 (2000).

SSR 00-4p states:

Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such a consistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

Reaching is broadly defined as extending arms and hands in any direction.

*Selected Characteristics of Occupations Define in the Revised Dictionary of Occupational Titles ("SCO")*, App. C; *see also* SSR 85-15, 1985 WL 56857 (1985).

There is no distinction in the DOT between different types of reaching, i.e., overhead or forward. The ALJ asked the VE to identify occupations which required no reaching overhead with her right dominant arm. (T. 114-115.) However, the occupations identified by the VE all require "frequent" reaching according to the DOT and SCO. DOT 209.687-026, 239.567-010, and 344.667-010. The VE's testimony that an individual with Plaintiff's RFC could perform occupations which require frequent reaching, presents a striking conflict which cannot be resolved without an explanation by the VE.

The ALJ has an affirmation duty to identify and resolve conflicts between the VE's testimony and the DOT. *Patti v. Colvin*, No. 13-CV-1123, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015). The ALJ here failed to do either. The ALJ did inquire of the VE if her testimony was consistent with the DOT, to which the VE testified it was. (T. 116.) However, this "catch-all question" did not satisfy the ALJ's affirmative duty under SSR 00-4p. *Diaz v. Atrue*, 3:11-CV-317, 2012 WL 3854958, at *6 (D.Conn. Sept. 5, 2012) ("The ALJ's catch-all question to the [VE] regarding any inconsistencies between the expert's testimony and the DOT does not satisfy the ALJ's duty to identify, explain, and resolve the conflicts between the expert's testimony and her decision."). It is very possible that the ALJ was unaware of the conflict and simply relied on the VE's affirmation that her testimony was consistent with the DOT.[7] However, it was the ALJ's affirmative duty to recognize conflicts and seek an explanation; therefore, any oversight was not harmless and must be remedied on remand. *Patti*, 2015 WL 114046, at *6

---

[7]     Of note, Plaintiff's counsel also questioned the VE during the hearing. He posed the following hypothetical to the VE: an individual with the [ALJ's RFC hypothetical] except that the individual is rarely able to reach, handle finger, or perform fine manipulation." (T. 118.) The VE testified that according to the SCO the individual would have to do "at least occasional" reaching, handling, and fingering in the occupations she identified. (*Id.*) However, as stated *supra*, the SCO requires "frequent" reaching for the occupations identified. This exchange highlights the conflict between the VE testimony and DOT, and the need for further explanation.

("Because the ALJ here elicited neither the basis for the VE's testimony that plaintiff could perform the jobs despite a limitation for only occasional reaching, nor a reasonable explanation for her deviation from the DOT, the court cannot determine whether substantial evidence supports the ALJ's step five findings and remand is required."). Therefore, remand is necessary to resolve the conflict between the VE testimony and the DOT's requirements pursuant to SSR 00-4p.

### E.    Whether the Appeals Council Properly Evaluated Additional Evidence.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10 at 27-28 [Def.'s Mem. of Law].) The Court adds the following analysis.

Under the Social Security Act, a plaintiff may "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." 20 C.F.R. § 404.970; *see also Perez v. Chater*, 77 F.3d 41, 44 (2d Cir.1996). To obtain a review of the additional evidence, the plaintiff must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Sergenton v. Barnhart*, 470 F. Supp. 2d 194, 204 (E.D.N.Y.2007) (citing *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Id.* If the Appeals Council fails to consider new, material evidence, "the proper course for the

reviewing court is to remand the case for reconsideration in light of the new evidence."
*Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009).

Plaintiff argues the evidence submitted to the AC from Kevin Setter, M.D. was new and material. (Dkt. No. 9 at 23 [Pl.'s Mem. of Law].) The AC denied review, noting that the evidence was "not contrary to the weight of evidence of record," the AC also stated that evidence submitted was a duplication of evidence already in the record. (T. 6.)

First, the MRIs submitted to the AC were referenced in the records before the ALJ. (T. 904-905.) For example, Dr. Thomas reviewed the June MRI results with Plaintiff during her December 16, 2010 visit. (T. 889.) Dr. Thomas again reviewed the June MRI at Plaintiff's January 27, 2011 visit and discussed the results with Plaintiff, who wished to continue her current therapy. (T. 887.)

Further, the AC found that Dr. Setter's April 19, 2011 treatment notes were a duplicate of his August 4, 2009 treatment notes. (T. 6.) While not an exact duplicate, the information provided is similar. In August 2009, Dr. Setter observed that Plaintiff could not lift, push, or pull with her right upper extremity. (T. 752.) In April 2011, Dr. Setter opined that Plaintiff could not lift, push or pull greater than ten pounds or overhead, and further she could not perform repetitive activities with her right shoulder. (T. 908.) The ALJ's RFC limiting Plaintiff to no overhead reaching and only occasionally use of her right arm, was consistent with Dr. Setter's 2011 limitations regarding Plaintiff's right shoulder and right arm. As discussed in Part IV.B, the ALJ's limitation to light work was supported by substantial evidence, and Dr. Setter's limitation to lifting/pushing/pulling up to ten pounds does not provide a basis for changing the ALJ's decision.

The July 23, 2010 Worker's Compensation Initial Report completed by Mike Sun, M.D., was not a duplicate of the March 23, 2010 report completed by Dr. Setter as implied by the AC decision. (*see* T. 909-910 and 809.) However, the July 23, 2010 report does not provide a basis for changing the ALJ's decision. Claiming the report was a duplicative was harmless error, as the report simply reiterates Plaintiff's wish to continue with conservative treatment and the information is not so contrary as to provide a basis for changing the ALJ's decision. (T. 910.)

Therefore, the AC did not err in its determination that the submitted evidence did not provide a basis for changing the ALJ's decision. The information provided was largely incorporated into the record before the ALJ by reference or the information was not substantial enough that it would have changed the ALJ's decision.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:    September 15, 2015
          Syracuse, NY

Hon. Glenn T. Suddaby
Chief, U.S. District Judge